IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| LEE BARNETT,<br><br>              Plaintiff,<br><br>vs.<br><br><br>HOLCIM, INC.,<br><br>              Defendant. | CV 14-9-BU-DWM-JCL<br><br><br>FINDINGS AND<br>RECOMMENDATION |

This wrongful discharge case comes before the Court on Defendant Holcim, Inc.'s ("Holcim") motion for summary judgment on Plaintiff Lee Barnett's ("Barnett") claims under the Montana Wrongful Discharge from Employment Act, Mont. Code Ann. § 39-2-901 et seq. The motion should be granted in part and denied in part as set forth below.

I.     **Background**[1]

---

[1] Consistent with well-established summary judgment standards, the Court takes the following facts from the materials of record and, where disputed, views them in the light most favorable to Barnett as the non-moving party.

1

Holcim is a cement manufacturer, and operates a cement plant near Three Forks, Montana, known as the Trident Plant. Barnett was hired as a Process Technician at the Trident Plant in July 2007, and moved to the position of Control Room Operator approximately one month later. In December 2007, Barnett was transferred to the position of Maintenance Engineer. Barnett remained in that position until his employment was terminated in November 2013.

When Barnett was initially hired, he reported to then Maintenance Manager John Todd ("Todd"). Sam Brubaker ("Brubaker") replaced Todd as the Maintenance Manager several months later, and was Barnett's supervisor for the next two years. In February 2012, Tim Noss ("Noss") was hired as the Maintenance Manager, and became Barnett's supervisor. Barnett had also applied for the Maintenance Manager position vacated by Brubaker, but was not interviewed or hired. Noss remained Barnett's supervisor until Barnett was discharged in November 2013.

During his employment, Barnett received annual performance reviews called "dialogue competency reviews." During each review, Barnett's supervisor numerically rated Barnett's job performance in several key categories as follows: 1 - not meeting expectations; 2 - partially meeting expectations; 3 - meeting expectations. (Doc. 40-19, at 4-5). The form on which the reviews were

completed allowed for Barnett and his supervisor to make written comments regarding each job performance category.

Barnett's overall dialogue ratings for 2010 and 2011 reflected that he was satisfying expectations. (Doc. 40-2). Barnett's performance rating dropped in 2012, however, and his overall dialogue rating for the year indicated that he was performing below expectations. (Doc. 40, ¶ 14; Doc. 40-2).

At some point in 2012, Barnett requested a raise during a discussion with Noss regarding his performance review. (Doc. 40, ¶ 16). Barnett claims the information set forth in his 2012 performance appraisal document contradicted what Noss told him during their prior discussion. (Doc. 44, ¶ 14(a)). When Barnett asked Noss about the response to his request for a raise, Noss told him that plant manager John Goetz had responded by saying "Oh, another one looking for money." (Doc. 40-1, at 43).

In March 2013, Holcim placed Barnett on a Performance Improvement Plan ("PIP"). (Doc. 22, ¶ 7). The PIP identified several areas needing improvement, and set forth specific objectives and deadlines with which Barnett was expected to comply. (Doc. 40-14). Holcim advised Barnett that failure to correct the various deficiencies noted in the PIP would put his position as mechanical engineer at risk. (Doc. 40-14).

Barnet met with Noss and Melissa Gentner ("Gentner"), the Trident Plant's human resources manager, twice in late March 2013 to discuss his job performance and the PIP. (Doc. 40-15, at 1-7). Barnett continued to meet with Noss and Gentner nearly once a month between April and October 2013 to discuss the PIP and wether he was making sufficient improvement in his job performance. (Doc. 40, ¶ 9; 40-5, at 8-12).

After the PIP was in place, Noss completed a mid-year 20013 performance review. (Doc. 40-13). Noss assigned numeric ratings indicating that Barnett was not meeting expectations in four job categories, partially meeting expectations in 20 categories, and meeting expectations in three categories. (Doc. 40-13, at 2-3). In September 2013, Noss completed a dialogue competency review in which he discussed two incidents in July and September of 2013 that he believed reflected performance deficiencies on Barnett's part. (Doc. 40-18). On October 23, 2013, Noss completed another dialogue competency review form on which he indicated Barnett was meeting expectations in eight performance categories, and partially meeting expectations in 17 performance categories. (Doc. 40-17). Approximately three weeks later, on November 12, 2013, Holcim terminated Barnett's employment for "unsatisfactory job performance, including failure to meet the goals and objectives of the performance improvement plan." (Doc. 44, ¶ 43).

4

On January 6, 2014, Barnett commenced this action against Holcim in the Montana Eighteenth Judicial District Court, and Holcim later removed the case to this Court based on diversity jurisdiction.[2] (Doc. 1). Barnett asserts claims under the Montana Wrongful Discharge from Employment Act ("the Act"), Mont. Code Ann. § 39-2-904(1)(b), and (c), alleging his employment was terminated without good cause and in violation of the express provisions of Holcim's written personnel policies. (Doc.7). Holcim moves for summary judgment on all aspects of Barnett's claims.

## II.   Summary Judgment Standards

A party is entitled to summary judgment under Federal Rule of Civil Procedure 56 if the depositions, documents, affidavits and other materials of record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Where, as here, the nonmoving party bears the burden of proof at trial, the moving party can meet its initial burden on summary judgment by showing that there is an absence of evidence in the record to support the nonmoving party's claims. *Celotox*, 47 U.S. at 325. *See also Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102

---

[2] Sitting in diversity jurisdiction, this Court applies the substantive law of Montana as the forum state. *See Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

(9th Cir. 2000). Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). An issue of fact is "genuine" if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id*. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

## III. Discussion

Montana's Wrongful Discharge from Employment Act ("the Act") provides as follows:

(1) A discharge is wrongful only if:

6

> (a) it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy;
>
> (b) the discharge was not for good cause and the employee had completed the employer's probationary period of employment; or
>
> (c) the employer violated the express provisions of its own written personnel policy.

Mont. Code Ann. § 39-2-904. Barnett asserts claims against Holcim under subsections (b) and (c).

## A. Good Cause

Barnett alleges Holcim discharged him without good cause in violation of Mont. Code Ann. § 39-2-904(1)(b). Holcim argues that Barnett's claim under subsection (b) fails as a matter of law because the undisputed evidence establishes that it had good cause for terminating his employment.

An employer has "good cause" to discharge an employee when it has "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, a disruption of the employer's operation, or other legitimate business reason." Mont. Code. Ann. § 39-2-903(5). "A legitimate business reason is one that is 'neither false, whimsical, arbitrary or capricious, and it must have some logical relationship to the needs of the business.'" *Becker v. Rosebud Operating Services, Inc.*, 191 P.3d 435, 441(Mont. 2008) (*quoting Kestell v.*

*Heritage Health Care Corp.*, 858 P.2d 3, 7 (Mont. 1993)).

"To defeat a motion for summary judgment on the issue of good cause, the employee may either prove that the given reason for the discharge is not 'good cause' in and of itself, or that the given reason 'is a pretext and not the honest reason for the discharge.'" *Becker*, 191 P.3d at 441 (Mont. 2008) (*quoting Johnson v. Costco Wholesale*, 152 P.3d 727, 734 (Mont. 2007). To create an issue of fact regarding pretext, the employee must provide more than "mere denial or speculation." *Johnson*, 152 P.3d at 734. In determining whether such a factual issue exists, "[a]ll reasonable inferences which can be drawn from the evidence presented must be drawn in favor of the non-moving party." *Vettel-Becker v. Deaconess Medical Center of Billings, Inc.*, 177 P.3d 1034, 1039 (Mont. 2008).

Holcim asserts it terminated Barnett's employment for "unsatisfactory job performance, including failure to meet the goals and objectives of the PIP." (Doc. 40-19, ¶ 23). The PIP advised Barnett that his job performance was not up to the required standards in six areas: proactive learning, projects/deadlines, process improvements, communication, reactive rather than proactive, and administrative tool/guideline. (Doc. 40-14). The PIP identified several deadlines by which Barnett was to meet certain goals and complete various projects. For instance, the PIP required Barnett to improve the compressed plant air system and meet certain

8

electrical energy assessment deadlines. The PIP also made clear that Barnett was responsible for the "Lube IT" project, and needed to meet various deadlines regarding its implementation. In addition, the PIP required that Barnett communicate more "assertive[ly] in a professional manner, be more proactive in "look[ing] for solutions and find[ing] ways to move things forward," and "set and report on milestones, and work on meeting deadlines consistently." (Doc. 40-14).

Holcim maintains that Barnett did not meet the PIP's objectives, as reflected in 2013 performance review documents and notes from Barnett's monthly meetings with Noss and Gentner. After meeting with Barnett on March 26, 2013, for example, Noss wrote that Barnett was "falling short of the progress and execution of the goals" in the PIP. (Doc. 40-15, at 5). In his mid-year 2013 performance review, Noss wrote that Barnett need to improve in "sustain[ing] PIP criteria," and assigned numeric ratings indicating Barnett was not meeting expectations in four areas and only partially meeting expectations in 20 areas. (Doc. 40-3, at 2-3 & 10). Noss also provided two dialogue competencies review examples describing problems with Barnett's project management and communication skills. (Doc. 40-18). And one month before Barnett was discharged, Noss completed a dialogue competencies review identifying problems with Barnett's response times, feedback, engineering skills, and leadership skills

9

(Doc. 40-17). Holcim argues it had good cause for terminating Barnett's employment because the above-described evidence establishes that Barnett was not satisfactorily performing his responsibilities as described in the maintenance engineer job posting (Doc. 40-3), and was not meeting the goals and objectives of the PIP.

Barnett disputes that Holcim had good cause for terminating his employment, and claims the reason given for his discharge was pretextual. To begin with, Barnett denies that his job performance was deficient and maintains he complied with the PIP. For instance, Barnett testified at his deposition that he worked to improve the compressed plant air system as required by the PIP and met all of the electrical energy assessment deadlines that passed before he was discharged in November 2013. (Doc. 40-1, at 115-17). In addition, Barnett denied having been negligent in carrying out the "Lube IT" project, and testified that he implemented the project by the September 30, 2013, deadline set forth in the PIP. (Doc. 40-1, at 118-19). The PIP also specified that Barnett was to determine the cause of any plant failures and meet with the process engineer within five days of the occurrence. (Doc. 40-14). Barnett testified that he had already been doing that, so this was easy for him to accommodate and achieve. (Doc. 40-1, at 120-21). Barnett denied having problems communicating in the

workplace, and claimed he was assertive enough to ensure that people were accomplishing their assignments as required by the PIP. (Doc. 40-1, at 121-22). By the time his deposition ended, Barnett had testified to satisfying virtually all of the PIP's requirements. Barnett's testimony is sufficient to raise a genuine issue of material fact as to whether Holcim discharged Barnett for a legitimate business reason.

Barnett takes the position that the proffered reason for his discharge was pretext, and that Holcim really discharged him because he requested a raise. The timing of events as described by the parties lends some support to Barnett's theory, raising it above the level of mere speculation. The parties apparently agree that Barnett requested a raise during a conversation with Noss sometime in 2012. (Doc. 40, ¶ 16; Doc. 40-1, at 38). It is undisputed that Barnett had received satisfactory job performance ratings until 2012, when his overall performance rating for the year dropped to "below expectations." (Doc. 40-2). The plan manager apparently responded to Barnett's request for a raise by saying "Oh, another one looking for money." (Doc. 40-1, at 43). By March 2013, Holcim had placed Barnett on the PIP, thereby initiating the process that Barnett alleges ultimately resulted in his wrongful discharge several months later in November 2013. Drawing all reasonable inferences in Barnett's favor, there is a genuine

issue of material fact as to whether Holcim discharged Barnett not because of unsatisfactory job performance or failure to comply with the PIP, but because he requested a raise.

To the extent Holcim may argue it had good cause to discharge Barnett because he used his work computer for personal business in violation of company policy, its argument is misplaced. Holcim did not cite improper use of the company's computers as a basis for Barnett's discharge. *See e.g.*, *Jarvenpaa v. Glacier Electric Cooperative, Inc.*, 970 P.2d 84, 90 (Mont. 1998) (an employer should be limited to introducing only those reasons given in the discharge letter or communication to employee, and cannot present collateral reasons for the discharge); *Galbreath v. Golden Sunlight Mines, Inc.*, 890 P.2d 382, 385 (Mont. 1995) (holding that reasons other than those set forth in the employer's discharge communication are irrelevant). Furthermore, while Barnett refers to a Holcim document titled "My Contribution to IT Security at my Workplace" and argues it does not prohibit personal use of Holcim's computers, neither party has made that document of part of the record on summary judgment.

The Court finds for the reasons set forth above that Barnett has come forward with sufficient evidence to raise a genuine issue of material fact as to whether his employment was terminated for good cause. Holcim's motion for

summary judgment on Barnett's wrongful discharge claim under Mont. Code Ann. § 39-2-904(1)(b) should be denied accordingly.

B. **Violation of Holcim's written personnel policy**

Barnett has also alleged a claim under Mont. Code Ann. § 39-2-904(1)(c), which provides that a discharge is wrongful if "the employer violated the express provisions of its own written personnel policy." Holcim argues this claim should be summarily dismissed because Barnett has not produced any evidence that Holcim violated any of the express provisions of its written personnel policies in terminating Barnett's employment.

Barnett has not responded to this aspect of Holcim's summary judgment motion, which is well-taken. Barnett signed an acknowledgment form that he received, reviewed, and agreed to adhere to Holcim's policies and guidelines, which are available on the company's intranet. (Doc. 40-1, at 39-40). Barnett admitted at his deposition and in response to Holcim's statement of undisputed facts that he is not aware of any written policy that Holcim may have violated by terminating his employment. (Doc. 40-1, at 186; Doc. 44, ¶ 50). Because Barnett has not come forward with any evidence that Holcim discharged him violation of an express provision of its written personnel policies, Barnett's claim under Mont. Code. Ann. § 39-2-904(1)(c) fails as a matter of law.

13

**IV.     Conclusion**

For the reasons set forth above,

IT IS RECOMMENDED that Holcim's motion for summary judgment be GRANTED as to Barnett's claim under Mont. Code Ann. § 39-2-904(1)(c), but DENIED as to Barnett's claim under § 39-2-904(1)(b).[3]

DATED this 19th day of August, 2015.

Jeremiah C. Lynch
United States Magistrate Judge

---

[3] The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings and recommendation must be filed on or before August 27, 2015, and any responses to those objections must be filed on or before September 3, 2015. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (the court need not give the parties the full statutory period set forth in 28 U.S.C. § 636(b)(1) within which to file objections).